# Staunton.

VIRGINIA-CAROLINA RAILWAY CO. v. CLAWSON'S ADMINISTRATOR.

September 15, 1910.

Absent, Cardwell, J.

1. NEGLIGENCE—*Infants—Presumption—Burden of Proof.*—In an action to recover damages for negligently killing a child under fourteen years of age the burden is on the defendant to rebut the legal presumption that he was incapable of contributory negligence.

2. NEGLIGENCE—*Infants—Care Required of—Intelligence—Case at Bar.*—Ordinarily a less degree of care is required of an infant than of an adult, but his responsibility is always to be measured according to his maturity and capacity, and determined by the circumstances of the case as shown by the evidence. While the law sedulously guards the safety of an infant too young and inexperienced to be conscious of danger, or to exercise judgment and discretion for his own protection, the rule is otherwise when he has attained sufficient age and experience to observe and avoid danger. In the latter case he must exercise a degree of care commensurate with his maturity and capacity. In the case at bar, a boy about thirteen years old was shown to have ample capacity and experience to take care of himself, and that his own negligence proximately contributed to his death.

3. RAILROADS—*Grade Crossings—Look and Listen.*—It is the duty of one about to cross a railroad at grade to look in each direction from which a train may come, and to listen for approaching trains, and if he fails to do so and is injured by the train while attempting to cross, his contributory negligence will bar recovery.

4. RAILROADS—*Persons Approaching Track—Presumption.*—A railroad company cannot be held liable for the failure of its engineer to anticipate that a person, whether infant or adult, approaching a crossing is going to step upon the track immediately in front of a moving engine, unless there is something to suggest to the

engineer that such person does not intend to remain in a place of safety until the train has passed.

5. Railroads—*Grade  Crossing—Lookout.*—The  duty  of  those  in charge of a moving train to keep a reasonable lookout at public crossings does not necessarily require that both the engineer and fireman shall be on the lookout at the same time.

Error to a judgment of the Circuit Court of Washington county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*White & Penn* and *George E. Penn, Jr.,* for the plaintiff in error.

*J. J. Stuart* and *L. P. Summers,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

In our view of this case, the only assignment of error which calls for extended notice is the action of the trial court in over-ruling the motion of the plaintiff in error, the defendant below, to set aside the verdict of the jury on the ground that the contributory negligence of the plaintiff's intestate was the proximate cause of the accident.

It is insisted in that connection that if it be conceded that the crossing at which the accident occurred was a public crossing, which imposed upon the railway company the duty of giving signals of the approach of its trains, and that it negligently failed to give such signals by blowing the whistle or ringing the bell, and to keep a reasonable lookout for persons on the crossing, as charged in the declaration, nevertheless the plaintiff's own evidence shows such contributory negligence on the part of his intestate as would bar a recovery.

The essential facts of the case may be summarized as follows: Fred Clawson, plaintiff's intestate, a boy about twelve years and ten months old, was run over and killed by an engine and tender of the defendant in the daytime, at the Extract Company's crossing in the town of Damascus. The engine was driving down grade at a rate of speed variously estimated at from eight to twenty miles an hour. At the point of accident the track of the defendant's railway, the Virginia-Carolina, and that of the Extract Company run parallel with each other, with an intervening space of twenty-five feet between rails. Clawson was playing with several other boys on the east side of the Virginia-Carolina track near the crossing, when the yard foreman of the Extract Company, who was shifting a box car on their track, called to them from the top of the car to come over and remove a plank which was lying across the rails. In response to his request two of the boys, Clawson and Tolley, crossed over to the west side of the Virginia-Carolina track and Clawson removed the obstruction. Tolley was at the crossing and Clawson fifteen feet above when they undertook to recross the Virginia-Carolina track. Tolley preceded his companion, and the engine was within a few feet of him when he cleared the eastern rail. Clawson was struck "just as soon as he got on" the track. This, in varying language, is substantially the account of the accident given by eye-witnesses of the plaintiff.

The engineer testified that he saw Tolley on the track at the crossing and Clawson at the side of the track a few feet above, but did not know of his attempt to cross in front of the engine until after the accident. It is clear from all the evidence that it was not possible for the engineer to have discovered Clawson's peril in time to have saved him.

Clawson being under fourteen years of age at the time of the accident, the burden rested upon the defendant to rebut the legal presumption that he was incapable of contributory negligence. To meet that burden, the defendant, without con-

tradiction, proved that he was a very intelligent boy; that he had formerly kept a stand in Damascus from which he sold pop and candy, and frequently drove his father's one-horse wagon, hauling wood and hay and other feed. (His father testified that he had a hired driver, and that if his son ever drove the wagon unattended it was without his knowledge.) The evidence also showed that the elder Clawson had been an engineer on the Virginia-Carolina railway for about sixteen or eighteen months, and that young Clawson had lived for several years in the immediate vicinity of the railroad; that he was frequently about the track, and crossed it in going to school when his father lived at Lauderdale.

Ordinarily a less degree of care is required of an infant than an adult, but his responsibility is always to be measured according to his maturity and capacity, and determined by the circumstances of the case as shown by the evidence. *Washington, &c. R. Co.* v. *Quayle*, 95 Va. 741, 30 S. E. 391; *Roanoke* v. *Shull*, 99 Va. 419, 34 S. E. 34, 75 Am. St. Rep. 791. See also 29 Cyc. 535.

In *McDaniel* v. *Lynchburg Cotton Mills Co.*, 99 Va. 146, 37 S. E. 781 (an elevator case), a boy twelve years and eight months old was held guilty of contributory negligence, "with which he was properly chargeable by reason of his maturity and intelligence," and his administrator was denied a recovery for an accident which occasioned his death.

So also, in *Seaboard, &c. R. Co.* v. *Hickey*, 102 Va. 394, 46 S. E. 392, it was held, "that an intelligent boy upwards of eight years of age, who was familiar with railroad trains and who had been repeatedly warned to keep off of moving cars," was guilty of contributory negligence, in attempting to get on a flat car while the train was in motion, and could not recover for resulting injury.

These cases serve to illustrate the general principles with respect to the age and degree of intelligence and capacity

necessary to render a child responsible for failure to exercise reasonable care for his own safety.

While the law sedulously guards the safety of an infant who is too young and inexperienced to be conscious of danger or to exercise judgment and discretion in protecting himself, the rule is otherwise where he has attained sufficient age and experience to observe and avoid danger. In the latter case, the law imposes upon him the obligation of using the reason he possesses, and of exercising a degree of care for his protection commensurate with his maturity and capacity, and for failure to do so will visit upon him the consequences of his own negligence.

In Thompson on Negligence, section 1492, the author observes: "In case of a child old enough to be in the language of the law *sui juris*, which roughly speaking means able to take care of himself, the question of his contributory negligence in attempting to cross a railroad track would be a question for a jury under much the same circumstances that it would in case of an adult."

The evidence, which as we have seen was undisputed on the point, leaves no room to doubt that plaintiff's intestate possessed ample capacity to have appreciated the danger of his surroundings, and his own negligence proximately contributed to the accident which cost him his life.

The oft-repeated language of Riely, J., in *Johnson v. Chesapeake, &c. R. Co.*, 91 Va. 171, 179, 21 S. E. 238, 240, is very much in point: "The track itself was a proclamation of danger. It was his duty before going upon it to use his eyes and ears. He should have both looked in either direction from which a train could come and listened; and if his faculties warned him of the near approach of a train, it was his duty to keep off the track. If he had done so in this instance he could not have failed to hear and see the coming train, and be made sensible of the danger of going upon the track. It was in plain view. And if he failed to look and listen, as duty

required of him, and attempted to cross the track in front of a rapidly moving train, and was caught before he got across and killed, his own act, his own negligence, so contributed to the injury that a recovery therefor cannot be sustained."

In the instant case there was an unobstructed view of the track in the direction from which the engine was coming for more than fifteen hundred feet.

In *Southern Railway Co.* v. *Daves*, 108 Va. 378, 61 S. E. 748, it was said: "A railroad company cannot be held liable for the failure of its engineer to anticipate that a person, whether infant or adult, approaching a crossing is going to step upon the track immediately in front of a moving engine, unless there is something to suggest to the engineer that such person does not intend to remain in a place of safety until the train has passed."

As the case must go back for a new trial, it is proper to say, that upon evidence similar to that at the first trial instruction No. 1—that the duty to keep a reasonable lookout does not necessarily require that both the engineer and fireman should be on the lookout at the same time—ought to be given. *Brammer* v. *N. & W. Ry. Co.*, 104 Va. 150, 51 S. E. 211.

For these reasons the judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed.*