**Virginia Margaret ROSEN, Plaintiff,**

v.

**RED ROOF INNS, INC., Defendant.**

**Civil Action No. 3:96CV871.**

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 9, 1997.

Claude Wood Anderson, Jr., C. Allen Riggins, Parker, Pollard & Brown, P.C., Virginia Beach, VA, for plaintiff.

Clark Hathaway Lewis, Mays & Valentine, Richmond, VA, Russell Vaughan Palmore, Jr., Richmond, VA, for defendant.

### MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER comes before the Court on Defendant Red Roof Inns, Inc.'s ("Red Roof") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the Court will GRANT Defendant's motion.

## I. BACKGROUND

Plaintiff Virginia Margaret Rosen is a citizen and resident of the State of New York. Complaint at ¶ 2. Red Roof is a corporation organized under the laws of the State of Delaware and having its principal place of business in Ohio. *Id.* at ¶ 3. Red Roof is in the business of operating motels in the Commonwealth of Virginia and throughout the United States and operates a facility on Commerce Road, just off of Interstate 95 in Richmond, Virginia ("Commerce Road inn"). *Id.* at ¶ 5, 15–16.

After securing a reservation a few days before, Ms. Rosen checked into the Commerce Road inn on 2 January 1995, at approximately 7:00 p.m., and was assigned to room 137. *Id.* at ¶ 9–10, 40. Room 137 is located on the ground floor in a building separate from the Commerce Road inn's main office. *Id.* at ¶ 11. Shortly after checking-in, Ms. Rosen was assaulted by two unknown male assailants as she was attempting to unload her luggage. *Id.* at ¶ 12. Once the assailants forced Ms. Rosen inside her room, they beat her, abused her, robbed her,

threatened to kill her, and brutally sexually assaulted her, all at gunpoint. *Id.* at ¶ 13.

Numerous assaults and acts of violence had occurred over a number of years prior to 1995 at the Commerce Road inn and at business locations adjacent to or in close proximity to the inn. *Id.* at ¶ 29–30. On 8 and 11 September 1994, Red Roof guests were assaulted and robbed, at gunpoint near rooms 148 and 143 of the Commerce Road inn, respectively. *Id.* at ¶ 31–32. At least one Red Roof employee was assaulted and robbed on the inn's premises prior to January 1995. *Id.* at ¶ 33. Red Roof regularly provided security guards at the Commerce Road inn prior to 2 January 1995, but Red Roof did not provide any security guards on 2 January 1995. *Id.* at ¶ 38. Red Roof did not provide surveillance devices to monitor its hallways, room locations or parking lots. *Id.* at ¶ 39.

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a claim for "failure to state claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). The function of motions to dismiss is to test the law governing claims, not the facts which support them. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Spell v. McDaniel,* 591 F.Supp. 1090 (E.D.N.C.1984).

When considering such a motion, the Court must presume that all factual allegations in the complaint are true. *See Puerto Rico ex. rel. Quiros v. Alfred L. Snapp & Sons,* 632 F.2d 365 (4th Cir.1980). All reasonable inferences must be made in favor of the non-moving party. *See Johnson v. Mueller,* 415 F.2d 354 (4th Cir.1969); *MacKethan v. Peat, Marwick, Mitchell & Co.,* 439 F.Supp. 1090 (E.D.Va.1977). The Court should not dismiss any count unless it appears beyond a doubt that the plaintiff could not recover under any set of facts which could be proven. *See Doby v. Safeway Stores, Inc.,* 523 F.Supp. 1162 (E.D.Va.1981); *Austin v. Reynolds Metals Co.,* 327 F.Supp. 1145 (E.D.Va. 1970).

## III. ANALYSIS

■ Defendant argues that, under Virginia law, it owed no duty to protect or warn Plaintiff against third persons' criminal acts committed while Plaintiff was on its property because acts of assaultive criminal behavior cannot reasonably be foreseen. Whether a duty exists is a question of law for the Court to decide. *See Burns v. Johnson,* 250 Va. 41, 458 S.E.2d 448, 451 (1995). Plaintiff contends that a special innkeeper-guest relationship and notice of past crimes in this high crime area warrant the imposition of a duty on Defendant.

### A. The "Wright" Duty Applicable to Innkeepers

The Supreme Court of Virginia has held that common carriers, landlords, and business invitors are not police and has refused to impose a duty upon them to protect passengers, tenants, or invitees from criminal acts by third persons. *See Wright v. Webb,* 234 Va. 527, 362 S.E.2d 919, 921 (1987). The court's rule and reasoning in *Wright* applies with equal force to the innkeeper context.

The plaintiff in *Wright* specifically urged the court to adopt the Second Restatement of Torts § 314A and impose such a duty on business invitors. The Restatement provides in relevant part that

(1) A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or had reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his guests.

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

Restatement (Second) of Torts § 314A (1965). The Supreme Court of Virginia specifically declined to adopt the Restatement. *Wright,* 362 S.E.2d at 921 (presumably in regard to § 314(3)). The court reasoned that "in ordinary circumstances, acts of assaultive

criminal behavior cannot reasonably be foreseen."[1] *Id.* Further, the court explained that the most effective deterrent to criminal acts of violence is the posting of a security force in the area of potential assaults, but in most cases that cost would be prohibitive. *Id.* Therefore, the court held that "it is unfair to place that burden on the invitor." *Id.*

■ Plaintiff targets a quotation in *Wright* that a particular common carrier case was inapplicable to the *Wright* case because "a business invitee does not entrust his safety to a business invitor to the same extent a passenger does to a common carrier." *Wright* 362 S.E.2d at 922. Plaintiff claims that this supports a different common carrier rule analogous to the Restatement that should apply to innkeeper cases rather than the *Wright* standard. However, this quotation provides only an unfinished segment of the supreme court's analysis. Even after stating the potential of a difference from common carrier cases, the *Wright* court subsequently explained the common carrier rule based on an imminent harm standard and applied it to the business invitor context. *Id.; see also infra* section B.1. Therefore, *Wright* does not warrant the application of a different standard in the present innkeeper case.

The Supreme Court of Virginia has made its intention clear that it will not adopt the Second Restatement of Torts § 314A. The court has declined to adopt the Restatement rule in the context of common carriers (§ 314A(1)) and business invitors (§ 314A(3)). *See Wright*, 362 S.E.2d at 921. *See also Connell's Ex'rs v. Chesapeake & O. Ry. Co.*, 93 Va. 44, 24 S.E. 467, 469 (1896) (common carriers); *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 207 S.E.2d 841, 844 (1974) (rejecting such a special relationship in the

landlord-tenant context). The *Wright* decision's application and analysis of common carrier precedent in formulating the business invitor rule supports an application of the same rule to the innkeeper context and clearly reinforces the Supreme Court of Virginia's rejection of the Second Restatement of Torts § 314A. *See also infra* section B.1. Plaintiff's argument that this Court should apply the restatement rule to · innkeepers (§ 314A(2)) is contrary to Virginia precedent and contrary to the reasoning articulated in *Wright* and its progeny. *See Godfrey v. Boddie–Noell Enters., Inc.*, 843 F.Supp. 114, 121 (E.D.Va.1994) (noting that the Supreme Court of Virginia in *Wright* were "careful to reject specifically the rule in the Restatement (Second) of Torts § 314A (1965), which suggests that a special relationship such as innkeeper/guest may give rise to a duty to protect invitees from the acts of third persons").[2]

Finally, Plaintiff argues that a higher standard for innkeepers is warranted by section 35.1–28 of the Virginia Code. *See* Va. Code Ann. § 35.1–28 (Michie 1996). Section 35.1–28 states in pertinent part that "[i]t shall be the duty of any person owning or operating a hotel to exercise due care and diligence in providing honest and competent employees and to take reasonable precautions to protect the persons and property of the guests of the hotel." *Id.* There are no Virginia cases interpreting this code section. Virginia law has long been that "the best construction of the statute is, to construe it as near to the reason of the common law as may be." *Deem v. Charles E. Smith Management, Inc.*, 799 F.2d 944, 946 (4th Cir.1986) (quoting *Chichester v. Vass*, 5 Va. (1 Call) 83, 102 (1797)). The reference to taking reasonable precautions to protect guests refers to pro-

1. The court specifically distinguished the duty to anticipate crimes against property from any duty to foresee assaultive criminal behavior. *Wright*, 362 S.E.2d at 921 (citing *Connell's Ex'rs v. Chesapeake & O. Ry. Co.*, 93 Va. 44, 24 S.E. 467, 469 (1896)).

2. Plaintiff cites *Crosswhite v. Shelby Operating Corp.*, 182 Va. 713, 30 S.E.2d 673 (1944) in support of its contention that hotel owners owe a higher duty. In *Crosswhite*, an infant fell through a hole in the screen of the defendant

hotel's window. The court held that the hotel had a duty to keep its premises safe. *Id.* 30 S.E.2d at 675. This case does not support Plaintiff's argument. *Crosswhite* concerned personal injuries sustained as a result of the direct negligence of hotel without the involvement of a third party. Likewise, Plaintiff's reliance on *Kirby v. Moehlman*, 182 Va. 876, 30 S.E.2d·548 (1944) (plaintiff injured in defective hotel chair), refers to the hotel's maintenance of its physical premises and no third party involvement.

tecting guests from negligent acts by the hotel and maybe even criminal acts by hotel employees. This interpretation coincides with the duties and reasoning established under common law regarding third party criminal acts. *See Wright*, 362 S.E.2d at 921.

In sum, the Court finds that, under Virginia law, the standard articulated in *Wright* is the appropriate standard to determine whether an innkeeper has a duty of care regarding the criminal acts of third persons against its guest.

### B.  Application of the Wright Standard

An application of the *Wright* standard demonstrates that Defendant did not have a duty to Plaintiff under the facts presented in Plaintiff's complaint. In *Wright*, the Supreme Court of Virginia held that

> a business invitor, whose method of business does not attract or provide a climate for assaultive crimes, does not have a duty to take measures to protect an invitee against criminal assault unless he knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee.

*Wright v. Webb*, 234 Va. 527, 362 S.E.2d 919, 922 (1987). This holding states one narrow exception for specific imminent harm and implies a second exception for businesses whose method of business attracts crime. Plaintiff argues that the present case falls into one or both of these exceptions.

### 1.  Specific Imminent Harm Exception

The Supreme Court of Virginia analyzed common carrier precedent that found a duty where the common carrier had "notice of a specific danger just prior to the assault." *Id.* 362 S.E.2d at 922; *see also Burns v. Johnson*, 250 Va. 41, 458 S.E.2d 448, 450 (1995). Plaintiff argues that the prior assaults at the Commerce Road inn provided Defendant with notice as necessitated by *Wright* adequate to impose a duty on Defendant. However, the Supreme Court of Virginia refused to impose liability for negligence based solely a background or criminal activity despite the plaintiff in *Wright's* argument that previous criminal activity provided notice. *Wright*,

362 S.E.2d at 922. *See also Godfrey v. Boddie–Noell Enters., Inc.*, 843 F.Supp. 114, 120 (E.D.Va.1994) ("[N]o duty will arise out of a history of similar crimes that would cause a reasonable person to anticipate the possibility of similar such crimes in the future.").

The Supreme Court of Virginia clarified the imposition of a duty under the imminent harm exception in *Gupton v. Quicke*, 247 Va. 362, 442 S.E.2d 658, 659 (1994). In *Gupton*, the court held that a duty arose making the defendant liable for assault by a third person where the defendant's employees learned of the argument and threats immediately prior to the armed conflict. *Id.* Further, after hearing the threats, the defendant allowed the subsequent assailant back into its establishment, where the criminal conduct ensued shortly thereafter. Hence, the court concluded that "[t]his duty arose by reason of the defendants' knowledge that an assault, which indicated an 'imminent probability of harm' to the plaintiff, was 'about to occur' in the cafe." *Id.* (quoting *Wright*, 362 S.E.2d at 922).

The situation in the instant case is not analogous to *Gupton*. There is no evidence that Defendant knew of any prior interaction between Plaintiff and her assailants or that Defendant knew the assailants were on its premises or in proximity to Plaintiff. In fact, there is no evidence that Defendant knew or should have known that the criminal acts were happening prior to their being reported to the inn. *See also Burns v. Johnson*, 250 Va. 41, 458 S.E.2d 448, 449–50 (1995) (refusing to find a duty even where the defendant's employee had interacted with and repelled the vile remarks of the drunk male customer just before he, without the knowledge of the employee, grabbed another customer, dragged her into a field, and raped her). Plaintiff cannot establish a duty via the imminent harm exception based on past crimes and has provided no other evidence to support a proposition that Defendant had notice of a specific danger just prior to the attack on Plaintiff.

### 2. The "Method of Business" Exception [3]

The Supreme Court of Virginia limited its standard to businesses "whose method of business does not attract or provide a climate for assaultive crimes." *Wright*, 362 S.E.2d at 922. Therefore, the negative implication of *Wright* recognizes a duty where a defendant's method of business *does* attract or provide a climate for assaultive crimes. Plaintiff argues that Defendant's Commerce Road inn provided a climate for assaultive crimes because it was located in a high crime area which endangered guests and in close proximity to route 95 which attracted unsuspecting guests who were more susceptible to the crime. Plaintiff's proposal is far too broad and would prevent innkeepers from operating their business in poor areas.

No Virginia cases address this issue; however one federal district court is instructive. *See Godfrey v. Boddie–Noell Enterprises, Inc.*, 843 F.Supp. 114 (E.D.Va.1994), *aff'd* 46 F.3d 1124 (4th Cir.1995) (Table, unpublished disposition). In *Godfrey*, the plaintiff was assaulted in the parking lot of a Hardee's restaurant located in a high crime area. The plaintiff brought a premises liability action against the restaurant for the criminal act of the third party assailant. The plaintiff introduced evidence of multiple incidents of criminal activity in the vicinity of the defendant's restaurant.[4]

The court held that "[t]he *Wright* court must have intended a business which incorporates a criminal element directly or indirectly into its method of conducting business, in other words, a business which somehow directly benefits from the presence of criminal or assaultive behavior." *Id.* at 123. Examining the evidence of the defendant's operations in terms of security personnel, lighting, location, and menu, the court declared as a matter of law that "no reasonable jury could agree that [the defen-dant] operated its business in such a manner as to attract or provide a climate for assaultive crimes." *Id.* The court further refused to find a higher duty based on public policy concerns. The court concluded that the finding of a duty would cause operating a business in a high crime area to amount to "negligence per se." *Id.* at 121. The court declined to adopt the plaintiff's suggestion that doing business in an atmosphere of crime should give rise to a higher standard of care. To do so, the court reasoned, would "make it nearly impossible to operate a business in an area which might be populated predominantly by ... poor people." *Id.* at 122–23.

It is implausible that the Supreme Court of Virginia, in proclaiming the *Wright* standard, intended to equate businesses in high-crime areas with businesses whose method of business promotes crime. In fact, the *Wright* case itself addressed the issue of previous crimes under the imminent harm standard which the court articulated, not the method of business exception which it impliedly excluded from the standard. *See Wright*, 362 S.E.2d at 922. In light of the Supreme Court of Virginia's pronouncements regarding prior criminal acts, the method of business exception must be interpreted as imposing a higher duty only where the business somehow directly benefits from the presence of criminal or assaultive behavior.

Even viewed in the light most favorable to Plaintiff, the complaint is insufficient to support the proposition that the Commerce Road inn benefitted from criminal or assaultive behavior on its premises. There is no allegation that Red Roof encouraged or condoned any criminal activity or that it catered to renting its rooms to criminals or assailants. Plaintiff argued at the hearing on the instant motion that the Commerce Road inn is part of all budget hotels' plan to place

---

**3.** Although this issue was not specifically briefed by the parties, both parties addressed it at the 2 January 1997 hearing.

**4.** The case was submitted to a jury on the question of whether the defendant conducted its business in a method which attracted criminal activity, thereby giving rise to a duty. *Id.* at 118. If the jury answered this question in the affirma-tive, it would then have the further task of determining whether the defendant breached that duty. When the jury became deadlocked, the court declared a mistrial. *Id.* at 115. The court then addressed the defendant restaurant's renewed motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure *Id.* at 118.

their facilities close to major highways in less costly and higher crime areas. Despite this allegation and in the absence of case law or a clear legislative pronouncement, the Court will not impose a higher duty which would make budget motels negligent per se for the criminal acts of third parties and likely drive them out of high-crime poor areas.

The Court finds that, under Virginia law, Defendant did not have a duty to protect Plaintiff against criminal acts of third persons. Where there is no legal duty to exercise care, there can be no actionable negligence. *See Deem v. Charles E. Smith Management, Inc.,* 799 F.2d 944, 945 (4th Cir.1986); *Virginia Ry. & Power Co. v. Winstead's Adm'r,* 119 Va. 326, 89 S.E. 83, 84 (1916).

## VI. CONCLUSION

For the reasons hereinbefore stated, the Court will GRANT Defendant's Motion to Dismiss. An appropriate Order shall issue.

### *FINAL ORDER*

THIS MATTER comes before the Court on Defendant Red Roof Inns, Inc.'s ("Red Roof") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6). For the reasons stated in the accompanying Memorandum Opinion, the Court GRANTS Defendant's motion and hereby DISMISSES the case.

Let the Clerk send a copy of this Order to all counsel of record.

And it is SO ORDERED.