Present:  All the Justices

MICHAEL R. DUDAS

OPINION BY

v.  Record No. 001539        JUSTICE LAWRENCE L. KOONTZ, JR.

January 12, 2001

GLENWOOD GOLF CLUB, INC.


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge


In this appeal, we consider whether the trial court properly awarded summary judgment to a business owner on the ground that it did not owe a duty of care to warn or protect its invitee who was the victim of a criminal assault by unknown third parties while on the business owner's premises.

BACKGROUND

Under well settled principles, we review the record applying the same standard the trial court must adopt in reviewing a motion for summary judgment, accepting as true "those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason."  Dickerson v. Fatehi, 253 Va. 324, 327, 484 S.E.2d 880, 882 (1997); see also Carson v. LeBlanc, 245 Va. 135, 139-40, 427 S.E.2d 189, 192 (1993).

On November 1, 1997, Michael R. Dudas, a business invitee, was playing golf on a public 18-hole golf course owned and operated by Glenwood Golf Club, Inc.  While playing near the

green of the 13th hole, Dudas and a companion were confronted by two unknown male trespassers and robbed at gunpoint. One of the assailants shot Dudas in the leg.

In an amended motion for judgment filed January 25, 1999, Dudas alleges that in the month preceding this robbery and assault there had been "at least two robberies of business invitees, one with gunfire, [at] Glenwood Golf Club at the 7th and 13th holes" and that the assailants responsible for these two incidents had not been apprehended. The amended motion for judgment contained three counts of negligence against Glenwood Golf Club.

In Count One, Dudas alleges that Glenwood Golf Club "negligently operated, managed, maintained, and repaired [its premises], thus rendering the premises unsafe by affording [the] assailants access and opportunity to harm Glenwood's invitees." In Count Two, Dudas alleges that Glenwood Golf Club owed him, as its invitee, a duty of care to warn him of the danger of a criminal assault on its premises. In Count Three, he alleges that Glenwood Golf Club owed him a duty to protect him from such assaults. In a further count, Dudas alleges that in failing to exercise these duties of care, Glenwood "acted consciously in disregard of plaintiff's rights and/or with reckless indifference to the consequences" of its actions. Dudas sought

2

$2,000,000 in compensatory damages and $350,000 in punitive damages.

On February 25, 2000 and after more than a year of discovery, Glenwood Golf Club filed a motion for summary judgment and supporting brief contending that there were no disputed material facts.  For purposes of resolving that motion, the parties agreed that two armed robberies and one attempted robbery of business invitees had occurred on the premises of Glenwood Golf Club during October 1997 and that another such robbery had occurred in May 1996.  Relying on Wright v. Webb, 234 Va. 527, 533, 362 S.E.2d 919, 922 (1987), Glenwood Golf Club contended that it owed Dudas, as its invitee, no duty to warn or protect him from the danger of being shot by a robber on its premises in the absence of knowledge that such a criminal assault was occurring or about to occur.  In a responding brief, Dudas contended that the prior criminal assaults on Glenwood Golf Club's premises were sufficient to place it on notice that it owed a duty of care to warn or protect its invitees from similar criminal assaults.

Following oral argument in which the parties adhered to the positions stated in their briefs, the trial court issued an opinion letter dated March 7, 2000.  The trial court noted that in Wright, this Court held that "a business invitor, whose method of business does not attract or provide a climate for

3

assaultive crimes, does not have a duty to take measures to protect an invitee against criminal assault unless he knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee."  234 Va. at 533, 362 S.E.2d at 922. Relying upon Wright, the trial court ruled that Dudas' "claim fails because there is nothing in the evidence to suggest that the criminal acts [of] which [Dudas] was an unfortunate victim were occurring or were imminent and that [Glenwood Golf Club] knew of these circumstances."  A final order awarding summary judgment to Glenwood Golf Club and incorporating the reasoning of the trial court's opinion letter was entered March 27, 2000. We awarded Dudas this appeal.

### DISCUSSION

The sole issue raised by Dudas on appeal is whether Glenwood Golf Club owed him a duty of care to warn or protect him against criminal assaults by unknown third parties while he was an invitee on its premises.  Whether such a duty of care is imposed upon Glenwood Golf Club is "a pure question of law." Burns v. Johnson, 250 Va. 41, 45, 458 S.E.2d 448, 451 (1995). Thus, the question whether Glenwood Golf Club had a duty of care under the circumstances of this case was one for the trial court to consider and determine, and summary judgment would be proper only if the trial court correctly determined that no such duty

4

exists.  See Acme Markets, Inc. v. Remschel, 181 Va. 171, 178, 24 S.E.2d 430, 434 (1943) ("[t]he law determines the duty, and the jury, upon the evidence, determines whether the duty has been performed").

Glenwood Golf Club contends that the facts of this case are squarely on point with Wright.  In that case, we said that "[o]rdinarily, the owner or possessor of land is under no duty to protect invitees from assaults by third parties while the invitee is upon the premises . . . [unless] there is a special relationship between [the] possessor of land and his invitee giving rise to a duty to protect the invitee from such assaults."  234 Va. at 530, 362 S.E.2d at 920-21.  We recognized that one such special relationship is that of business invitor and its business invitee.  However, we declined to find inherent in that bare relationship an absolute duty of the business invitor to protect its invitees from criminal assaults by unknown third parties on its premises.  We observed that:

> In ordinary circumstances, it would be difficult to anticipate when, where, and how a criminal might attack a business invitee.  Experience demonstrates that the most effective deterrent to criminal acts of violence is the posting of a security force in the area of potential assaults.  In most cases, that cost would be prohibitive.  Where invitor and invitee are both innocent victims of assaultive criminals, it is unfair to place that burden on the invitor.

Id. at 531, 362 S.E.2d at 921.  Accordingly, we limited the duty owed by the business invitor to protect its invitee against

5

criminal assaults to those instances where it "knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an <u>imminent probability of harm</u> to [its] invitee." (Emphasis added). <u>Id.</u> at 533, 362 S.E.2d at 922.

Dudas contends, however, that the appropriate analysis to be applied in this case in determining whether he was owed any duty of care by Glenwood Golf Club with regard to criminal acts by unknown third parties does not involve consideration of "imminent probability of harm" as stated in <u>Wright</u>. Rather, he contends that once the special relationship of business invitor and its business invitee is established, as it is here, then the only remaining consideration in the analysis of the business invitor's potential liability is whether it was reasonably foreseeable that the invitee would be injured by a criminal assault committed by a third party. Dudas relies primarily on <u>A.H. v. Rockingham Publishing Co.</u>, 255 Va. 216, 495 S.E.2d 482 (1998), to support this contention.

The thrust of Dudas' contention is that the prior criminal acts in <u>Wright</u> were not similar in nature to the act which resulted in the injury to the plaintiff in that case and, therefore, an imminent probability of harm to the plaintiff was necessary to establish liability on the business invitor. However, Dudas contends that where there are prior similar

criminal attacks, the issue becomes whether the plaintiff's injury was reasonably foreseeable. To the extent Dudas' contention is that A.H. modified our holding in Wright or established two distinct "tests" for determining whether a business invitor owes a duty of care to its business invitees with regard to the danger of harm from criminal assaults committed by an unknown third party on its premises, Dudas misreads A.H. Our analysis in A.H. focused on the particular special relationship and the surrounding circumstances at issue there and did not modify our holding in Wright concerning the potential duty of care owed by a business invitor to its invitee with regard to criminal acts committed by third parties on its premises.

We have consistently adhered to the rule that the owner or occupier of land ordinarily is under no duty to protect its invitee from a third party's criminal act committed while the invitee is upon the premises. Gupton v. Quicke, 247 Va. 362, 363, 442 S.E.2d 658, 658 (1994); see also Burns, 250 Va. at 44, 458 S.E.2d at 451. Our decision in Wright fashioned a narrow exception to this general rule. In applying that exception, careful analysis of particular factual patterns in subsequent cases must be used to avoid permitting the narrow exception to swallow the general rule. Dudas' contention in the present case would create such a result. This is so because Dudas' theory of

7

liability is premised solely upon the foreseeability of the danger of injury to a business invitee.

In that context, we have stressed that whether a duty of care arises from a special relationship between a business invitor and its invitee regarding a criminal assault by a third party committed on the premises so as to qualify as an exception to the general rule of nonliability involves a fact specific determination. Thus, in Thompson v. Skate America, Inc., 261 Va. ___, ___, ___ S.E.2d ___, ___ (2001)(decided today), we have recognized that when a business invitor has knowledge that a particular individual has a history of violent, criminal behavior while on its premises, and thereby poses an imminent probability of harm to an invitee, the business invitor has a duty of care to protect its other invitee from assault by that person.

However, we are of opinion that the facts of this case do not satisfy the requirements of the narrow exception to the general rule adopted in Wright. Dudas contends that the similarity and chronological proximity of the prior crimes in this case distinguish it from Wright. We disagree. In Wright, the plaintiff's injury resulted from an assault committed during an apparent robbery by an unknown third party in the defendant's motel parking lot. The criminal activity that had occurred prior to this assault included a double murder in an adjacent

8

parking lot three and a half years before the assault, a physical assault upon a female guest in a room of the motel almost a year before the assault, and frequent recent larcenies from motel rooms and vehicles in the parking lot. 234 Va. at 529-30, 362 S.E.2d at 920. Regardless whether this previous criminal activity was sufficient to make the subsequent assault on the plaintiff reasonably foreseeable, we narrowed the appropriate inquiry to whether this previous criminal activity was sufficient to "lead a reasonable person . . . to conclude that there was an imminent danger of criminal assault" to the plaintiff. Id. at 533, 362 S.E.2d at 922.

The fact that the prior criminal acts on the premises of Glenwood Golf Club were of the same nature as the criminal act that caused Dudas' injury does not change our analysis with respect to the narrow exception adopted in Wright. Prior to the two robberies and one attempted robbery, it had been over a year since there had been any similar criminal activity on Glenwood Golf Club's premises. Thus, just as in Wright, the level of criminal activity would not have led a reasonable business owner to conclude that its invitees were in imminent danger of criminal assault, and there was certainly nothing to indicate that Dudas in particular was in such danger.

Moreover, in addition to the question of imminent danger of injury from criminal assault by an unknown third party, we must

9

also consider "the magnitude of the burden of guarding against [harm to the plaintiff] and the consequences of placing that burden on [the business owner]" before imposing a duty to protect its invitees. Id. at 531, 362 S.E.2d at 921. It is in that context that we have observed that "[e]xperience demonstrates that the most effective deterrent to criminal acts of violence is the posting of a security force in the area of potential assaults. In most cases, that cost would be prohibitive." Id. Certainly, in the case of an 18-hole golf course, which is necessarily an extensive and open tract of land, generally having at many points uncontrolled access from other property and public ways, the cost of guarding against occasional criminal trespassers would be unduly great. Thus, because the facts do not establish that there was an imminent probability of harm to Dudas from a criminal assault by an unknown third party and it would have been unduly burdensome to require Glenwood Golf Club to post a security force for his protection, we hold that Glenwood Golf Club owed no duty to protect Dudas from the danger of injury from such an assault.

Similarly, we hold that under the facts of this case Glenwood Golf Club had no duty to warn Dudas of the potential danger of criminal assaults by third parties. Glenwood Golf Club was not an insurer of Dudas' safety. In our view, to require a business owner who, through no fault of its own, has

10

been victimized by assaultive criminals coming onto its property, to thereafter give warnings of the remote but potential danger of injury from the acts of such criminals would unfairly burden that business owner in light of the potential harm such warnings could do to its reputation and the loss of its trade which would inevitably result.

For these reasons, we hold that the trial court did not err in awarding summary judgment to Glenwood Golf Club. Accordingly, the judgment of the trial court will be affirmed.

<u>Affirmed</u>.